# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision is not binding precedent for any court and may be cited only for persuasive value or to establish res judicata, collateral estoppel, or law of the case.




FILED

Oct 09 2025, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Stephanie Hamm,

*Appellant-Respondent*

v.

Jacob Waltz,

*Appellee-Petitioner*

---

October 9, 2025

Court of Appeals Case No.
25A-JP-491

Appeal from the Johnson Circuit Court

The Honorable Andrew S. Roesener, Judge

Trial Court Cause No.
41C01-2002-JP-49

---

**Memorandum Decision by Judge Scheele**
Judges Foley and Kenworthy concur.

**Scheele, Judge.**

## Case Summary

Following their separation, Stephanie Hamm (Mother) and Jacob Waltz (Father) were granted joint legal custody and Mother was granted primary physical custody of their child, H.W. (Child). In 2024, Father petitioned for custody modification after Mother notified the court of her intent to relocate with Child from Franklin to Evansville. The court awarded Father primary physical custody of then nine-year-old Child. Mother now appeals, challenging some of the court's findings of fact and conclusions of law as well as its judgment that relocation was not in Child's best interests. Because the challenged findings and conclusions are not clearly erroneous and the judgment is supported by the evidence, we affirm.

## Facts and Procedural History

Child, born in 2015, resided with Mother and Father until their separation when Child was three years old. Thereafter, Child continued to reside in Franklin with Mother. Father petitioned the court to establish paternity and custody, and the court accepted a mediated agreement from the parties in November 2020. Mother was granted primary physical custody, and the parties were granted joint legal custody. Father was granted parenting time pursuant to the Indiana Parenting Time Guidelines plus overnights every Wednesday and on Sundays of his weekends.

In March 2023, Father filed a motion for contempt alleging "Mother violated the existing joint legal custody order and interfered with communications between Father and [Child]." App. Vol. II p. 116. The parties also filed competing motions to modify custody in March 2023. Mother and Father were ordered to participate in mediation and a final hearing was eventually scheduled for February 2024. Following Father's motion for a continuance, the final hearing was rescheduled for August 2024.

In April 2024, before the final hearing occurred, Mother filed a notice of intent to relocate with Child from Franklin to Evansville, where Mother's fiancé resided. Mother indicated that she intended to return to school in Evansville and start a family with her fiancé. Father immediately filed an objection to relocation, a motion for a restraining order preventing relocation, and a motion to modify custody. An interim order appointing a parenting coordinator and restraining Mother's relocation with Child was issued in August 2024. The court held a final hearing on all pending motions in February 2025.

Father resides in Clifford, a small town in Johnson County, with his wife (Stepmother) and their daughter. He picks up Child, now nine years old, from school on his parenting time days and spends time with Child until he leaves for work on a night shift from 8:00 p.m. to 6:00 a.m. While Father is at work, Child stays at his home with Stepmother and Child's sibling. Child and Stepmother have "a strong, mutual love for one another" and Child enjoys spending time with her. *Id.* at 97. Child is also a "very loving, patient, and protective big brother" and benefits from that role. *Id.* at 98; Tr. Vol II p. 138.

Child has a "wonderful" relationship and is "extraordinarily close" with Father. Tr. Vol. II p. 29; App. Vol. II p. 97. Child is also "very closely bonded" with Mother with whom he has a "healthy, supportive, and mutually beneficial" relationship. App. Vol. II p. 97. In addition, Child is closely bonded with his maternal and paternal extended family. He has dozens of cousins, several of whom are enrolled in the same school system as Child.

Before Mother intended to relocate, Mother and Father agreed to enroll Child in his current school. Father testified that Child had "really blossomed" at school: Child's disruptive behaviors had "gone way down" and his report card reflected positive changes. Tr. Vol. II p. 82. Mother testified that Child would attend a higher-ranked school district if relocation was permitted. However, she had not discussed that school with Father ahead of the final hearing.

Child also participates in several extracurricular activities including football and baseball. According to Mother, Child loves football and is becoming more involved in baseball. Mother and her fiancé regularly attend Child's games, practices, and other school events. Partly due to his work schedule, Father is unable to regularly attend Child's extracurriculars. Father has been able to attend about one-third of Child's baseball games, and Mother's fiancé testified that he had seen Father at two of Child's choir concerts—one Christmas concert and another within the last year.

The parties have had ongoing co-parenting disputes. For example, Father testified that he did not want Child to play football because it is an injury-prone

sport; however, Mother enrolled Child in football anyway. Father also testified that Mother scheduled some of Child's medical appointments and changed Child's therapist without notifying or conferring with him.

[10] Child's Guardian ad Litem (GAL), Lisa Fears, also testified at the final hearing. GAL Fears observed that Child was closely bonded with Mother, Father, Stepmother, Child's sister, and his extended family. However, she noted concerns about the parties' communication issues, including that Mother had previously scheduled medical appointments without notifying Father. GAL Fears was less concerned with those issues after a parenting coordinator became involved and the parties' communication improved. GAL Fears also recounted an incident that led Mother to petition for a protective order on behalf of Child against Stepmother. An ex parte protective order was initially granted but was terminated after a hearing; then, Mother dismissed her petition. The Indiana Department of Child Services was also contacted, but any allegations of abuse or neglect of Child were unsubstantiated.

[11] Although GAL Fears concluded it would be difficult for Child to be away from his immediate and extended family, she recommended that Mother be permitted to relocate with Child. She proposed a new parenting time schedule that would provide Father with the same number of overnights per year as the current schedule. However, those visits would occur less frequently throughout the week and in longer blocks during school breaks.

Ultimately, the court denied Mother's relocation with Child and modified primary physical custody to Father. The court noted the case presented a "close call" but, after considering the statutory factors, it determined relocation was not in Child's best interests. App. Vol. II p. 110. In addition, the court determined the March 2023 motions to modify custody were moot and granted Father's motion for contempt based on Mother's prior unilateral decision making; however, due to parents' progress since 2023, the court determined a simple admonishment was an appropriate remedy for Mother's contempt. Mother now appeals the court's denial of her relocation and modification of custody to Father. The court's judgment on the motion for contempt is not at issue on appeal.

## Discussion and Decision

### I. Standard of Review

We have a well-established preference "for granting latitude and deference to our trial judges in family law matters." *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (quoting *In re Marriage of Richardson,* 622 N.E.2d 178 (Ind. 1993)). "Appellate courts 'are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *Id.* (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)).

"[T]he reviewing court will not set aside the findings or judgment unless clearly erroneous[.]" *Id.* at 123 (internal quotation and citations omitted). "Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them." *Id.* at 125 (internal quotations and citations omitted). "Clear error occurs when our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made." *Maddux v. Maddux*, 40 N.E.3d 971, 974-75 (Ind. Ct. App. 2015), *reh'g. denied*. "Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011).

## II. Findings of Fact and Conclusions of Law

Mother first challenges the court's Findings of Fact 36, 39, and 40, and Conclusions of Law 61, 62, 63, and 64, arguing they are not supported by the record. She asserts that Conclusions 61 through 64 are "more appropriately considered findings of fact as they make conclusions regarding father's relationship with the child." Appellant's Br. p. 12. "In reviewing findings of fact and conclusions of law, an appellate court applies 'a two-tiered standard of review by first determining whether the evidence supports the findings and then whether the findings support the judgment.'" *Masters v. Masters*, 43 N.E.3d 570, 575 (Ind. 2015) (quoting *Weigel v. Weigel,* 24 N.E.3d 1007, 1010 (Ind.Ct.App.2015), *trans. not sought*). We review the contested findings and conclusions accordingly.

## A. Finding 36 and Conclusions 61, 63, and 64

Finding 36 and Conclusions 61, 63, and 64 of the court's custody modification order state:

> 36. The minor child's relocation, if permitted, would significantly diminish the frequency of contact between the minor child and Father.

> \*\*\*

> 61. The distance placed between Father and the minor child, if the relocation is permitted, is significant. It will have an undeniable bearing on the frequency with which Father and son see each other. It is of critical importance to this court that Father, without fail, exercises the full complement of parenting time awarded to him by the court's controlling order. This order ensures, among other things, that Father and the minor child have an overnight every week. The distance involved will put an end to this.

> \*\*\*

> 63. The parenting time schedule proposed by Mother and the Guardian Ad Litem will give Father and the minor child longer blocks of time together, but less frequent contact. This is no critique of the plan. It is the best that can be done, it seems, under the circumstances. All of this is to say, that, if the relocation is permitted, it will not irreparably blight the relationship between Father and the minor child. There is simply too much of an existing connection between these two (2). The relocation will, however, weaken the relationship…..the court does not see how it could not. Put simply, Father and son see each other frequently and this will not be able to continue if the minor child moves to Evansville.

64. The court also worries about the downstream effects of the relocation. Once the minor child enters junior high school and high school he will presumably do what most teenagers do: Spend less time with his parents and more time with his friends. When this happens, proximity is everything for a parent because these almost inevitable changes in the nature of the parent-child relationship result in a reduction of time parents get with their children. Put simply, Father will have fewer chances to enjoy parenting time with the minor child as the minor child matures. Mother, to be sure, will be affected by these changes as well, but what she keeps and Father loses are those fleeting, but important, moments when a parent and child sit on the couch or stand in the kitchen, even for a few minutes at the end of the day, and share hopes, worries, successes or whatever quotidian occurrences have come to pass that day. A reduction in these sorts of moments may not matter as much to a father who only occasionally sees his child. But, that is not the case here. There are nine (9) years of frequent and beneficial contact between these two (2) and the likely loss of that closeness brought to bear by the repetition of their history is consequential.

App. Vol. II pp. 101, 106-8.[1]

[17] In support of her argument, Mother contends "the only parenting time that would change for father was his Wednesday parenting time." Appellant's Br. p. 12. She also alleges that Father was absent for portions of his overnight time because he works a night shift. Mother reiterates that the GAL-proposed

---

[1] In her brief, Mother references Finding 36 and Conclusions 61, 62, and 63 while discussing frequency of contact between Father and Child; she addresses Finding 39 alone; she then references Finding 40 and Conclusion 61 while discussing Father's ability to attend extracurricular activities. However, the substance of her arguments collectively addresses the following groups of findings and conclusions: (1) 36, 61, 63 and 64; (2) 39; and (3) 40 and 62.

schedule would provide Father with the same number of overnights per year as before and concludes that such a schedule would still constitute "frequent contact." *Id.* at 14.

[18] To the extent that Mother asks us to apply greater weight to the GAL-proposed schedule, we decline to do so. *See Best*, 941 N.E.2d at 502 ("Appellate judges are not to reweigh the evidence[.]"). It is undisputed that the number of days per week that Father spends with Child would decrease if Child relocated to Evansville with Mother. The court reasonably characterized this dynamic as diminishing the frequency of Father's contact with Child. As such, Finding 36 and the challenged portion of Conclusions 61, 63, and 64—that the frequency of Father's contact with Child would decrease with relocation—are not clearly erroneous. Mother does not challenge any other portion of these Conclusions.

## B. Finding 39

[19] Finding 39 of the court's custody modification order states:

> 39. The minor child participates in choir as well as baseball and football. He has formed a number of friendships among his teammates and classmates.

App. Vol. II p. 101.

[20] Mother claims that "testimony was lacking at trial that the child participates in choir." Appellant's Br. p. 14. Yet she also explains there "are only two places in the transcript that discuss choir concerts[,]" both during Mother's fiancé's testimony. *Id.* Indeed, Mother's fiancé testified that he attended choir concerts

and saw Father at the concerts: Father "was at the Christmas [concert] and this last one we just had this year." Tr. Vol. II p. 188. Therefore, we are not persuaded to a firm conviction that the court's finding that Child participates in choir is a mistake. Finding 39 is not clearly erroneous.

### C. Finding 40 and Conclusion 62

[21] Finding 40 and Conclusion 62 of the court's custody modification order state:

> 40. Father's work day typically commences at 8:00 p.m. and concludes at 6:00 [a.m.] These hours of employment place a significant obstacle in the path of Father appearing for weekday choir concerts or ball games scheduled in the evening should the minor child relocate to Evansville.
>
> ***
>
> 62. The hardship and expense that befalls Father, while not prohibitive, is certainly something more than negligible. The presumptive costs of exercising parenting time between Clifford and Evansville do not appear to be exorbitant and Father's income is more than sufficient to pay any travel costs associated with this parenting time. Father will not have to board a plane and fly across multiple time zones to see the minor child. The drive is less than three (3) hours. It must also be said, however, that, given Father's third shift work schedule and the travel time involved, he will miss out on virtually every weeknight choir concert, ball game and practice, as well as opportunities for those irregular and unexpected chances to spend a few hours together by grabbing a late dinner, taking a walk, or going to the park. While these are not financial hardships, they are hardships nonetheless.

App. Vol. II pp. 101, 107.

[22] Mother contends that there was no testimony that Child had choir concerts on weeknights or that Father attended weeknight games or practices. Instead, Mother asserts that her own testimony—that Father went to one-third of Child's baseball games, attended only one football game, and refused to take Child to his football games—proved that Father does not attend such activities. Although it is true that Father did not want Child to play football and did not regularly attend football games, Mother's argument mischaracterizes the court's finding and conclusion. *See* Tr. Vol. II pp. 69, 161.

[23] Finding 40 and Conclusion 62 do not find whether Father does or does not attend Child's weeknight choir concerts, ball games, practices, or other extracurriculars. Rather, both speak about the difficulty Father would have in attending such activities in the future considering Father's work schedule and the travel time that would be required. Father's work schedule and the increased travel time for Father to attend Child's extracurriculars in Evansville are undisputed. Finding 40 and Conclusion 62, therefore, are not clearly erroneous.

## II. Best Interests

[24] Mother also contends the court's findings of fact do not support its judgment that modification of custody was in Child's best interests. "We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Kirk*, 770 N.E.2d at 307. Thus, "it is not enough that the evidence might support some other conclusion, but it must positively require the

conclusion contended for by appellant before there is a basis for reversal." *Steele-Giri*, 51 N.E.3d at 124 (citation omitted).

[25] Indiana Code chapter 31-17-2.2 (Relocation Statutes) governs child custody modifications where, as here, one parent notifies the court of her intent to relocate with the child. The nonrelocating parent must file a response that may include an objection to the relocation of the child, a motion requesting a restraining order preventing the relocation and a modification of custody, and a request for a hearing on said motion. Ind. Code § 31-17-2.2-5(a)(3) (2019). The relocating parent has the initial burden to show that "the proposed relocation is made in good faith and for a legitimate reason." Ind. Code § 31-17-2.2-5(e) (2019). If the relocating parent meets that burden, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." Ind. Code § 31-17-2.2-5(f) (2019).

[26] In addition, when determining whether to modify a custody order, the Relocation Statutes require the court to take into account an enumerated list of factors and "[o]ther factors affecting the best interest of the child."[2] Ind. Code § 31-17-2.2-1(c) (2020). "The other factors affecting the best interest of the child include, by implication, the factors set forth for [initial] custody determinations

---

[2] The enumerated factors required for consideration by the Relocation Statute include: the distance involved; the hardship and expense for the nonrelocating parent to exercise parenting time; the feasibility of preserving the nonrelocating parent's relationship with the child; whether there is a pattern of conduct by the relocating parent to promote or thwart child's contact with the nonrelocating parent; and the reasons each parent provides for or against the relocation. Ind. Code § 31-17-2.2-1(c) (2019). Here, Mother does not challenge whether the trial court considered these factors.

and modifications under Indiana Code section 31-17-2-8[.]" *H.H. v. A.A.*, 3 N.E. 3d 30, 34 (Ind. Ct. App. 2014) (internal quotations and citations omitted). Although not exhaustive, best-interest factors include the child's age and sex; the wishes of the parents and the child, with more consideration to the child's wishes if he is over the age of fourteen; the interaction and relationship of the child with his parents, siblings, and any other person who significantly affects his best interests; the child's adjustment to his home, school, and community; the mental and physical health of the individuals involved; and evidence of domestic or family violence by either parent. Ind. Code § 31-17-2-8 (2017).

[27] Mother alleges that the court "ultimately denied relocation based on an improper weighing of best-interest factors." Appellant's Br. p. 15. She argues that the court "failed to give proper weight to [Child's] close bond with his mother, his excitement about moving, and his ability to maintain a relationship with his father through generous parenting time and shared transportation responsibilities[.]" *Id.* at 18.

[28] Mother likens her case to *In re Paternity of V.D.*, 226 N.E.3d 816 (Ind. Ct. App. 2024). In *V.D.*, this court reversed a trial court's denial of a mother's relocation with her child and modification of primary physical custody to the child's father. While the court made specific findings as to some of the required relocation factors, it made "no findings . . . that could feasibly be said to comment upon [p]arents' wishes, the relationship of [c]hild with [p]arents and with her extended family, the mental and physical health of all individuals involved, and any evidence of a pattern of domestic abuse or family violence by

either parent." In other words, the trial court in *V.D.* failed to consider the best-interest factors as required under the Relocation Statutes. However, Mother's reliance on *V.D.* is misplaced as she alleges the trial court improperly weighed the best-interest factors, not that the trial court failed to consider said factors in reaching its judgment. On its face, Mother's argument is a request to reweigh the evidence, which we cannot do. *See Best*, 941 N.E.2d at 502.

[29] Here, the court's order reflects ample consideration of Child's best interests. In favor of relocation, the court considered Mother's "unquestionably strong" relationship with Child, Child's "very close bond" to Mother's fiancé, and Child's excitement about possibly moving to Evansville. App. Vol. II pp. 109-10. The court also considered that Child would attend a school system that has a "superior academic rating" to Child's current school system, if relocation was permitted. *Id.* at 102.

[30] However, the court ultimately gave more weight to the evidence showing that relocation was not in Child's best interests. The court found that Father and Child "are extraordinarily close" and Child enjoys time with Stepmother and his sister. *Id.* at 97-98. The court considered the "downstream effects of the relocation" in light of Child's age as he approaches middle school and the negative impact that would have on spending time with Father if Child relocated. *Id.* at 108. In addition, the time Child would be able to spend with his extended family would decrease: the court specifically noted "the type of entrenched family relationships that [Child] enjoys in central and south-central Indiana simply do not exist in Evansville." *Id.* at 108-9. Finally, the court found

that Child "made salutary strides in both academic performance and deportment during the 2024-25 school year." *Id.* at 109. Although it noted this case was a "close call[,]" the court ultimately concluded that relocation was not in Child's best interests and awarded primary physical custody to Father. *Id.* at 110.

[31] The court's findings readily demonstrate that the court appropriately considered the best-interest factors under Indiana Code section 31-17-2-8. That the evidence could have been weighed differently to support a judgment in favor of relocation is not enough to warrant reversal. *Steele-Giri v*, 51 N.E.3d at 124. Because the findings support the court's conclusion that modification of primary physical custody to Father was in Child's best interests, the judgment is affirmed.

[32] Affirmed.

Foley, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEY FOR APPELLEE

Heather L. George Myers
Greenwood, Indiana